[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10595

_____

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

*versus*

HAITHAM YOUSEF ALHINDI,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cr-80085-AMC-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether intervening orders that changed the statutory basis for a defendant's custodial hospitalization and dismissed his underlying indictment render this appeal moot. After Haitham Alhindi was arrested for cyberstalking, 18 U.S.C. § 2261A(2)(A), the district court found him incompetent to stand trial and ordered him to undergo evaluative hospitalization for not more than four months, *see id.* § 4241(d)(1). Nearly eight months later, Alhindi challenged his confinement for exceeding the time limit under section 4241(d)(1) and for violating the Due Process Clause, U.S. CONST. amend. V. The district court denied Alhindi's motion and extended his confinement. *See* 18 U.S.C. § 4241(d)(2)(A). While this appeal of that order was pending, the government commenced a civil-commitment proceeding against Alhindi in the Eastern District of North Carolina, *id.* § 4246. The district court in the criminal action then ruled that Alhindi's capacity was unrestorable and dismissed his superseding indictment. Because Alhindi is now confined under a statutory authority different from the one he challenges on appeal and is no longer under indictment, we cannot provide him meaningful relief. We dismiss this appeal as moot.

## I. BACKGROUND

In May 2022, Alhindi was arrested for cyberstalking after making violent threats to a former coworker. A magistrate judge

ordered that Alhindi be detained pretrial due to his "serious impulse control and anger management issues" and "strong indications of mental illness and delusion." *See id.* § 3142. On June 7, 2022, a grand jury in the Southern District of Florida indicted Alhindi on one count of cyberstalking. *See id.* § 2261A(2)(A). A superseding indictment entered on December 13, 2022, extended the charges to five counts of cyberstalking.

On July 14, 2022, Alhindi's counsel requested that the district court evaluate his competency because of concern that he "may be suffering from paranoid delusions rendering him unable to assist in his own defense." The next day, the district court granted that request and instructed the Federal Bureau of Prisons to complete a psychological examination and to prepare a report on its findings by August 26, 2022. Capacity and quarantine issues in the prison system delayed the submission of this report.

On November 28, 2022, the district court held a hearing and found Alhindi incompetent to stand trial. It issued a commitment order under section 4241(d) for Alhindi to "undergo competency-restoration treatment at a medical facility." It ruled that Alhindi was to be "hospitalized for treatment in a suitable facility for such a reasonable time, not to exceed four months from the date of this Order." And it directed that Alhindi "be placed into a Federal Medical Facility either in or as close to Florida as possible."

On February 27, 2023, upon learning that a backlog at Federal Medical Center Butner in North Carolina had prevented the Bureau from hospitalizing Alhindi, the district court *sua sponte*

ordered the Bureau to "forthwith hospitalize" Alhindi "for treatment at a suitable facility . . . , as it was ordered to do in the November 28, 2022 Competency Order."

On April 13, 2023, Alhindi moved to dismiss his indictment. He argued that his continued detention violated section 4241(d) because that statute only allows hospitalization "for such a reasonable period of time, *not to exceed four months*" to determine whether he would attain competency soon. *Id.* § 4241(d)(1) (emphasis added). He also contended that his detention violated the Due Process Clause.

On April 21, 2023, the district court denied Alhindi's motion to dismiss his indictment and directed the Bureau to commence evaluative hospitalization of Alhindi by July 1, 2023. It rejected Alhindi's argument that his continued detention violated section 4241(d), explaining that the four-month time limit does not start until the hospitalization begins. And it rejected his argument that it violated his right to due process because "this is not a record of indefinite or unreasonably prolonged detention." Alhindi timely filed an interlocutory appeal challenging that order.

On June 21, 2023, Alhindi arrived at Federal Medical Center Butner for his evaluative hospitalization. On July 19, 2023, the district court entered an order that the Bureau's final report on whether Alhindi's competency could be restored was due by October 11, 2023, and that, under section 4241(d)(1), Alhindi's evaluative hospitalization would end on October 18, 2023.

24-10595               Opinion of the Court                         5

On October 4, 2023, the Bureau submitted the competency report. The report noted that Alhindi repeatedly declined offers to take medication and participate in psychological testing, which meant that some forms of the competency evaluation were "unable to be completed." It diagnosed Alhindi with delusional disorder of a persecutory type and concluded that he was incompetent. But it opined that "there is likely a substantial probability that Mr. Alhindi's competency to stand trial can be restored with appropriate treatment with antipsychotic medication."

On October 13, 2023, the district court held a status hearing to address next steps in the light of the competency report. At this hearing, the government announced that it intended to seek involuntary medication of Alhindi as an attempt to restore his competency.

On February 15, 2024, almost eight months after his evaluative hospitalization began, Alhindi filed a motion arguing that his hospitalization was "unlawful and unconstitutional." He argued that the four-month period for his evaluative hospitalization under section 4241(d)(1) expired on October 21, 2023, and that he could not be hospitalized under section 4241(d)(2)(A) either because the district court did not make a determination that "there is a substantial probability that within such additional period of time [Alhindi] will attain . . . capacity." *Id*. § 4241(d)(2)(A). He also argued that his continued hospitalization violated the Due Process Clause.

On February 21, 2024, the district court denied Alhindi's motion. It stated that "[t]o the extent there is a need on this record for

| 6 | Opinion of the Court | 24-10595 |

an additional Court finding, pursuant to 18 U.S.C. § 4142(d)(2)(A), that there is a substantial probability that [Alhindi] will attain the capacity to permit the proceedings to go forward, the Court hereby makes that finding." And it ordered the Bureau to hospitalize Alhindi "for treatment in a suitable facility for an additional reasonable period of time." Alhindi timely filed an interlocutory appeal challenging this order.

On April 1, 2024, this Court resolved Alhindi's first interlocutory appeal. *See United States v. Alhindi*, 97 F.4th 814 (11th Cir. 2024). We affirmed the initial hospitalization order after concluding that the four-month time limit applies to the period of hospitalization, not the time of commitment. *Id.* at 824–26.

On May 9, 2024, the district court denied the government's request to involuntarily medicate Alhindi. The next day, the government filed a Certificate of Mental Disease or Defect and Dangerousness in the United States District Court for the Eastern District of North Carolina. *See* 18 U.S.C. § 4246(a). That district encompasses Federal Medical Center Butner, where Alhindi remains committed.

On May 16, 2024, the government requested that the district court in Florida enter an order finding Alhindi incompetent and unrestorable, which would trigger the start of civil-commitment proceedings under section 4246 in North Carolina. On May 20, 2024, the district court granted the government's request. It found Alhindi "not competent to proceed in this instant matter and not restorable."

On July 22, 2024, Alhindi moved for immediate release and dismissal of the superseding indictment in the original district court. He argued that the district court had exhausted all options under section 4241 and that his continued hospitalization violated the Due Process Clause. On July 30, 2024, the government responded that the district court should deny Alhindi's motion. It also explained that "[a] dismissal of the Superseding Indictment would have no affect [sic] on his detention status in the [Eastern District of North Carolina] so long as the dismissal was 'solely for reasons related to the mental condition of the person.'"

On August 23, 2024, the district court dismissed the superseding indictment without prejudice "for reasons related to [Alhindi]'s mental condition." It stated that "[t]he dismissal of the Superseding Indictment precludes continued detention of [Alhindi] pursuant to the Superseding Indictment in this case." But it recognized that a stay of release remained in effect in the civil-commitment proceeding in North Carolina. It explained that dismissal was not statutorily required but that there was also "no realistic possibility" that Alhindi "will be restored to competency sufficient to stand trial on the pending charges." And it directed the clerk to close the case and terminate all pending motions.

## II. STANDARD OF REVIEW

We review jurisdictional questions, including the mootness of an appeal, *de novo*. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022).

### III. DISCUSSION

Under Article III of the Constitution, our jurisdiction as a federal court is limited to "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2, cl. 1. There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010) (alteration adopted) (citation and internal quotation marks omitted). The third, mootness, bars us from adjudicating appeals that "no longer present[] a live controversy with respect to which the court can give meaningful relief." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (citation and internal quotation marks omitted). This jurisdictional bar applies "at all stages of the litigation." *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006) (citation and internal quotation marks omitted).

This appeal turns on whether two intervening orders prevent us from remedying the violations that Alhindi alleges. As we have explained, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Alhindi was hospitalized under section 4241(d) when he commenced this appeal, but he is now hospitalized under section 4246 after the district court found that his competency was unrestorable. And the district court later dismissed the superseding indictment against Alhindi "for reasons related to [his] mental condition." To determine whether we can offer Alhindi any

24-10595               Opinion of the Court                         9

"meaningful relief" in the light of these developments, *id.*, we must examine the interplay between a competency evaluation and restoration process under section 4241 and a civil-commitment proceeding under section 4246.

Section 4241(d) provides two authorities for involuntary hospitalization of a mentally incompetent defendant awaiting trial on a criminal charge. *See* 18 U.S.C. § 4241(d). Section 4241(d)(1) establishes that a defendant can be hospitalized for "such a reasonable period of time, not to exceed four months" to evaluate whether there is a "substantial probability that in the foreseeable future he will attain . . . capacity." *Id.* § 4241(d)(1). And section 4241(d)(2) permits further hospitalization for an "additional reasonable period of time" until "his mental condition is so improved that trial may proceed" if "the court finds that there is a substantial probability that within such additional period of time he will attain . . . capacity." *Id.* § 4241(d)(2). Section 4241(d) directs that "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." *Id.* § 4241(d).

Section 4246 governs the process for how a hospitalized defendant can be civilly committed. *See id.* § 4246. A person in custodial hospitalization who suffers from a mental defect can qualify if his "sentence is about to expire," he "has been committed to the custody of the Attorney General pursuant to section 4241(d)," or "all criminal charges [against him] have been dismissed solely for

reasons related to the mental condition of the person." *Id.* § 4246(a). The person must also be "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another," and "suitable arrangements for State custody and care of the person [must] not [be] available." *Id.* Upon the government's filing of a certificate attesting that these requirements are met, the filing "shall stay the release of the person pending completion of procedures contained in this section." *Id.*

Based on these provisions, two intervening orders have foreclosed our ability to grant Alhindi relief in this appeal. Alhindi ceased being subject to competency-restoration treatment under section 4241(d)(2)(A) when the district court issued the order finding Alhindi "not competent to proceed in this instant matter and not restorable." Since then, Alhindi's confinement has been based on a different statutory source: a civil-commitment certificate under section 4246. We cannot give Alhindi "meaningful relief" from that commitment because it is the subject of a separate civil proceeding in the Eastern District of North Carolina. *Al Najjar*, 273 F.3d at 1336.

In other situations where new statutory bases superseded the original bases for orders challenged on appeal, we have held that the appeals of the original orders were moot. In *Al Najjar v. Ashcroft*, for example, we held that an appeal of an order releasing an alien on bond became moot when an intervening affirmance of a deportation order gave the Attorney General the "plain and

unmistakable power" to detain him under a different statutory provision. *Id.* at 1332, 1338–40. And in *De La Teja v. United States*, we held that an appeal of a pre-removal detention order became moot when an intervening final removal order detained an alien "pursuant to a wholly different statute." 321 F.3d 1357, 1361–63 (11th Cir. 2003). Although these decisions did not involve section 4241(d), their logic applies with equal force in this appeal. Because Alhindi's current commitment is authorized by section 4246, not section 4241(d), this appeal is moot.

The dismissal of the superseding indictment confirms that this appeal is moot. The district court made clear that "[t]he dismissal of the Superseding Indictment precludes continued detention of [Alhindi] pursuant to the Superseding Indictment in this case." So the order that Alhindi challenges in this appeal lacks any remaining legal effect. The district court no longer has an action pending against Alhindi. And the only court with jurisdiction over a "live controversy" related to Alhindi's current commitment is the district court in North Carolina. *Christian Coal.*, 662 F.3d at 1189 (citation and internal quotation marks omitted). Because courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong," we must dismiss this appeal. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

## IV. CONCLUSION

We **DISMISS** this appeal as moot.

24-10595              JORDAN, J., Concurring              1

JORDAN, Circuit Judge, Concurring in the Judgment:

    I agree with the court that this appeal is moot, and for me mootness results from the combined effect of two intervening events. The first is that Mr. Alhindi is now the subject of a civil commitment proceeding under 18 U.S.C. § 4246 and is no longer being held under 18 U.S.C. § 4241. The second is that the indictment against him in the criminal case—from which this appeal arises—has been dismissed due solely to his mental condition.

    Mr. Alhindi argues that his appeal is not moot under the reasoning of *United States v. Carrington*, 91 F.4th 252 (4th Cir. 2024). Because the court does not address *Carrington*, I write separately to explain why that case does not save this appeal from dismissal on mootness grounds.

    In *Carrington*, the Fourth Circuit explained in part that in a case like this one—where there is a competency evaluation in a criminal case in one district pursuant to § 4241 and a simultaneous civil commitment proceeding in another district pursuant to § 4246—"[a]ny challenges to delays in prior periods of custody, or to the criminal court's authority to issue the operative custody order, must be raised in the criminal court itself." *Id.* at 259. "In effect, this means that the civil-commitment court may only hear challenges to the period of custody that immediately precedes the civil-commitment proceeding." *Id. See also id.* at 261 (explaining that if a defendant does not challenge § 4241 delays in the criminal court he cannot "revive them in a challenge to the civil-commitment certificate's validity") (emphasis removed).

As Mr. Alhindi reads *Carrington*, his current appeal before us is not moot because his challenges to the additional period of time he was in § 4241 custody—without an appropriate order finding a substantial probability that he could be restored to competency—can and should be resolved in this appeal. If we conclude, for example, that the district court did not have the authority to enter the February 21, 2024, order, he believes that he could present our decision to the civil commitment court in the Eastern District of North Carolina and ask it to rule that at the time the civil commitment proceeding was instituted he was not properly "in the custody of the Attorney General" pursuant to § 4241(a).

The Fourth Circuit's analysis in *Carrington*—including its explanation of how §§ 4241 and 4246 work—makes sense to me. But *Carrington* does not prevent this appeal from being moot. First, as the court explains, we cannot order Mr. Alhindi released from custody under § 4241 because he is no longer being held under that statute; he is instead being held pursuant to § 4246 (which stays his release pending the resolution of the civil commitment proceeding). Second, we have no jurisdiction over anyone in North Carolina who currently has custody of him. Third, the criminal indictment against him in this case has been dismissed, so there is no longer an underlying matter in which we could give him effective relief.

A person need not be in the custody of the Attorney General pursuant to § 4241 in order for the government (through the director of the facility holding the person) to file a civil commitment

certificate.  The government can also file such a certificate if the person is one "against whom all criminal charges have been dismissed solely for reasons related to [his] mental condition[.]" § 4246(a).  And that is now Mr. Alhindi's situation.

The Fourth and Eighth Circuits have persuasively held that the eligibility conditions set out in § 4246(a) constitute an element of the civil commitment case and do not go to the subject-matter jurisdiction of the civil commitment court.  *See United States v. Curbow*, 16 F.4th 92, 117 (4th Cir. 2021); *United States v. Ryan*, 52 F.4th 719, 722 (8th Cir. 2022).  It seems to me that if we were to hold—as Mr. Alhindi wants us to—that the district court in his criminal case did not have the authority to enter the February 21, 2024, order, then the government (through the director of the facility holding Mr. Alhindi) could simply amend the civil commitment certificate (or file a new certificate) to allege that Mr. Alhindi—instead of being a person who was in the custody of the Attorney General pursuant to § 4241—is now a person against whom all criminal charges have been dismissed solely because of his mental condition.  *See* § 4246(a).  And that would leave Mr. Alhindi in the same position he is in today: in custody pursuant to § 4246 pending resolution of the civil commitment proceeding in the Eastern District of North Carolina.  This is, unfortunately, one of those cases where "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).